Alleging total and permanent disability as a result of strain received while working in the meat department at the commissary of the Southern Advance Bag Paper Company, Inc., plaintiff filed suit for four hundred weeks compensation on the theory that the strain suffered had aggravated an existing condition growing out of an automobile accident injury in 1928 in which plaintiff's skull was severely fractured, resulting in an operation on his brain for removal of a blood clot.
The answer admitted plaintiff's employment and that he had sustained a fracture of the skull in 1928 but denied that an accident had occurred, as alleged by plaintiff, or that his condition had been aggravated by any happening in the course of his employment.
The district court gave judgment rejecting plaintiff's demand and he has appealed to this court.
The plaintiff testified that he has followed the butcher's trade all of his life; that in 1928 he had suffered a brain injury and had a blood clot removed; that this had caused him no trouble until after he received the strain complained of in this suit which he testified was on the last Wednesday in November, 1945, rather than on December 5, 1945, as alleged in the petition; that on the morning of the accident, he was instructed to get a quarter of a beef out of the store room; that a Mr. Gray helped him put the beef, which weighed 165 pounds, on his breast and shoulder; that as he started out of the door, the shank of the quarter hit the top of the door; that he was about to drop the beef but Mr. Gray helped him; that the incident caused him to become sick at the stomach and to feel pain at the base of his skull; that he remained on the job until noon and as the store was closed Wednesday afternoon, he filled two appointments — one in Ruston and one in Monroe; that on the return trip from Ruston he was reading a magazine on the bus when his head pained him again; that Thursday morning he went to see the company doctor, who took his blood pressure and temperature and prescribed for him; that he also received a prescription from a Dr. Blum and that on December 7th he drew $5.00 from the company in order to go to Monroe to see the doctor there.
On cross-examination, he stated that he had had a facial stroke about three years previously, which occurred while he was cutting meat and without strain and that he had been treated by Dr. J.J. Bennett in Ruston for arthritis. He also stated that he did not tell Dr. Robinson about straining with the piece of beef on his first visit after the accident but did do so the second time he went to him.
Dr. G.H. Robinson who is in charge of the defendant's medical clinic at Hodge, Louisiana, testified that Mr. Evans came to see him on the 29th of November, 1945 complaining of aches and pains, especially in his arm and neck; that he gave no history of any kind of accident or strain; that he gave him capsules for pain and colds and he came back about a week later and told him of the 1928 injury but still gave no indication that he had sustained any kind of accident, strain, or hurt while employed; that on that occasion he recommended to him that he go to a neurologist; that, had the man stated that he had been injured on the job, he would have reported it at the time to the insurance company and recommended a doctor.
Mr. McCloskey, manager of the store in which plaintiff worked, testified that plaintiff made no complaint or statement that he had received any injury or strain either on the day of the accident or on the occasion some days later when plaintiff asked for and received a $5.00 advance on his wages so that he could go to Monroe and see a doctor there for his sickness. *Page 145 
Mr. Graves, foreman in the butcher shop at the Hodge paper mill, testified that the quarters of beef handled by plaintiff at the time that he alleged he was hurt weighed about 65 pounds; that he himself weighed at that time only 135 pounds and was suffering from a double hernia and yet he carried a quarter of beef alone without difficulty. He said that Mr. Evans did not hit the quarter of beef he was carrying against anything nor did he slip or fall or make any complaint at all about hurting himself and that his first complaint was on the following morning and that was "hurting in the neck;" and that he had complained before the alleged accident of his neck hurting.
Mr. Frank Johnson, personnel manager whose duties included handling of workmen's compensation grievances, etc., testified that the first information received by his office that Mr. Evans had been hurt was from his attorney on December 21, 1945.
Mr. Clyde Fulton, an employee of Armour Company, testified that he had known plaintiff for some eight or nine years and that on or about December 21, 1945, plaintiff asked him for assistance in getting a job and plaintiff at the time stated that he was physically able to go to work.
Dr. M.W. Hunter of Monroe testified he examined plaintiff on December 20, 1945, found him mentally deeply confused and that, in view of the history of his previous head injury and the x-ray evidence, plaintiff was not physically able to do heavy lifting work and that over exercise or strenuous exercise "could aggravate a preexisting brain condition."
Dr. J.Q. Graves, Monroe, Louisiana, testified that he examined plaintiff on January 7, 1946; that he was restless, and talked with much difficulty and was disorientated, behaving very much like a man who was under the influence of alcohol or one who was coming out from that influence, complaining of pains radiating from the back of his neck out forward and under the hanger of the jaw bone and some pain down the shoulders. He examined plaintiff again several months later and found him much better and both mentally and physically stable. Dr. Graves testified that plaintiff told him that he had been operated on by Dr. Gordon Taylor of Houston, Texas, who did a craniotomy on him, i.e., the bony flap of the left parietal bone was elevated, and that he did not know what was done to him other than that; that he had examined the x-ray pictures of the skull, which showed a large horse-shoe shaped jagged scar in which the left parietal bone had been separated for the purpose of turning the flap back or elevating the flap and that there was not a complete bony union then, only a hard fibrous tissue.
As to plaintiff's ability to work, Dr. Graves testified that the last time he examined him he was in condition to do the same kind of work he was doing before the alleged injury but there was a limit to his ability to do laborious work due to the skull condition resulting from the 1928 injury, and that, in his opinion, in the event of a strain such as he complained of, plaintiff would not become permanently injured, but, after such a strain would soon build back to normal, and that as an examiner he would pass plaintiff for limited work.
After a careful examination of the testimony, we conclude that the plaintiff suffered no accident or compensable strain and that his unfortunate physical condition in December, 1945 and January, 1946 was not the result of injury received on the job, and that plaintiff's condition was no worse at the time of the trial than it was at many times during the years intervening between the 1928 injury and the alleged accident or strain. The district court correctly rejected his demands. The judgment is affirmed with costs. *Page 146